UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 07-22644-CIV-MARTINEZ-BROWN

YATCELIS MOLINA,

    Plaintiff,

vs.

JIFFY LUBE INTERNATIONAL, INC., formerly known as, AMERICAN OIL CHANGE CORPORATION, d/b/a JIFFY LUBE,

    Defendant.
_____/

## ORDER GRANTING FINAL SUMMARY JUDGMENT

Yatcelis Molina ("Plaintiff") filed the present action against her former employer, Jiffy Lube International, Inc. ("Defendant" or "Jiffy Lube"), in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, asserting state law claims for malicious prosecution and false arrest. Plaintiff alleges that Jiffy Lube instigated and influenced her arrest and prosecution for the theft of missing Jiffy Lube bank deposits. On October 5, 2007, Defendant removed the action to this Court. This matter is now before the Court on Defendant's Motion for Summary Judgment **(D.E. No. 19)**, filed on July 7, 2008. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

### I. Preliminary Matters

In opposition to Defendant's motion for summary judgment, Plaintiff relies in part upon depositions conducted pursuant to a criminal proceeding against Plaintiff. Defendant argues that the criminal depositions are inadmissible for the purposes of this motion for summary judgment.

Depositions are generally permitted in consideration of summary judgment. *Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 751 (11th Cir. 2002) (citing Fed. R. Civ. P. 56(c)).

In the Eleventh Circuit, summary judgment depositions must comply with Rule 32(a) of the Federal Rules of Civil Procedure, which requires that the party against who the depositions are offered, Defendant in this case, was "present, represented, or reasonably noticed." *Nippon*, 291 F.3d at 751; Fed. R. Civ. P. 32(a). Thus, the Court may consider depositions from another proceeding if the party against whom they are presented "was provided with notice and an opportunity to attend and cross-examine [the] deponents." *Nippon*, 291 F.3d at 750. Defendant in this case was not present or represented in the criminal depositions, nor was Defendant provided an opportunity to cross-examine the deponents. Indeed, the State of Florida was unrepresented at the criminal depositions and the only attorney present was Plaintiff's attorney.[1] In any event, the evidence sought in a criminal prosecution for grand theft differs from that sought in a civil proceeding for malicious prosecution and false arrest. Even had a State Attorney been present at the deposition, he or she would not have represented Defendant's interests. The criminal depositions at issue do not meet the requirements of Rule 32(a).

Furthermore, statements in summary judgment affidavits and depositions must "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(e). These facts need not be in an admissible form when they are submitted for summary judgment purposes, but they must be admissible in some form at trial. *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). Out-of-court statements that would be inadmissible hearsay at trial are not, however, admissible as substantive evidence in a summary judgment motion. *Id.*; *see also Macuba v. Deboer*, 193 F.3d 1316, 1323-24 (11th Cir. 1999) (out-of-court statements introduced on summary judgment either must not qualify as hearsay, must fall under one of the hearsay

---

[1] Plaintiff was the defendant in the criminal action.

exceptions, or must not be admitted as substantive evidence); *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775, 783 (11th Cir. 2004) ("[i]nadmissible hearsay generally cannot be considered on a motion for summary judgment."). Hearsay statements that are inadmissible as substantive evidence, and instead are merely "potential impeachment evidence . . . may not be used to create a genuine issue of material fact for trial." *McMillian v. Johnson*, 88 F.3d 1573, 1585 (11th Cir. 1996).

Unlike statements made in depositions that are admissible on summary judgment under Rule 56, the statements Plaintiff seeks to admit were made not only out of Court, but also outside of this civil proceeding. The criminal depositions at issue would be considered hearsay at trial, and they could only be used to impeach the witnesses. Plaintiff has not alleged that any of the individuals whose statements she seeks to admit were unavailable to be deposed or unable to provide declarations or affidavits with regard to the current proceedings. Even if they were unavailable, Plaintiff has not produced evidence that "the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination," as required by Rule 804(b)(1) of the Federal Rules of Evidence.

One of the depositions at issue is by Hector Landrove, a regional manager at Jiffy Lube, which might qualify as an admission by a party's agent under Rule 801(d)(2) of the Federal Rules of Evidence, and not, therefore, be considered hearsay. As explained above, however, even if Landrove's deposition is not inadmissible hearsay, it does not meet the requirements of Rule 32 of the Federal Rules of Civil Procedure. Accordingly, the Court will not consider the criminal depositions submitted by Plaintiff for the purpose of the summary judgment proceeding.

## II. Factual Background

Plaintiff Yatcelis Molina ("Plaintiff") was employed by Jiffy Lube at Store No. 805, located in Hialeah, Florida, as a Customer Service Associate who worked as a car cashier. (Lanier Aff. ¶ 5); (Molina Dep. 7). At Jiffy Lube Store No. 805, the manager and assistant manager would count cash and prepare it for deposit. (Molina Dep. 7). Then, once the deposits were prepared, Plaintiff's job was to deliver the deposits to the bank. (Molina Dep. 7, 8, 11, 25); (Lanier Aff. ¶ 6). Plaintiff would then get a receipt for the deposit, which she would turn over to the manager. (Molina Dep. 8).

### A.  Missing Deposits and Jiffy Lube's Internal Investigation

Floyd Mitch Lanier ("Lanier") is employed as a Corporate Security Representative for the Shell Oil Company. (Lanier Aff. ¶ 2).[2] As a Security Representative, Lanier is in charge of security operations at all company-owned Jiffy Lube stores in the state of Florida, including Store No. 805. (Lanier Aff. ¶ 3). In December 2004, Store No. 805's Regional Manager, Hector Landrove ("Landrove"), advised Lanier that Store No. 805 was missing bank deposits. (Lanier Aff. ¶¶ 2-4). Lanier and Landrove conducted an internal investigation on behalf of Jiffy Lube to determine the facts and circumstances surrounding the missing bank deposits. (Lanier Aff. ¶ 5).

Jiffy Lube's internal investigation included communications with bank employees where the deposits were supposed to have been made. (Lanier Aff. ¶ 5). The internal investigation also included a review of relevant documentation, including revenue report summaries, bank deposit slips, and employee timesheet reports.[3] (Lanier Aff. ¶ 5). As part of their investigation, Lanier

---

[2] Shell Oil Company owns Pennzoil-Quaker State Company, which, in turn, owns Jiffy Lube International, Inc. (Lanier's Aff., ¶ 2).
[3] Plaintiff testified that the bank deposit slips, which the manager and assistant manager filled out, must have been falsified. (Molina Dep. 38-39). Plaintiff does not assert any personal knowledge in support of this statement; indeed, Plaintiff admits that she never saw the deposit slips. (Molina Dep. 39). Plaintiff's assumptions regarding the deposit slips are not "made on

and Landrove conducted employee interviews of Anthony Tamarit, the Manager of Store No. 805, Gabriel Fernandez, the Assistant General Manager, and Plaintiff. (Lanier Aff. ¶ 5). Although the internal investigation did not lead to a definitive suspect in connection with the missing deposits, the Jiffy Lube employees who were interviewed, including Plaintiff, identified Plaintiff as the person whose job it was to deliver the missing deposits to the bank. (Lanier Aff. ¶¶ 6, 9); (Molina Dep. 7, 8, 11, 25).

Lanier and Landrove called Plaintiff to a meeting at Chico's Restaurant and questioned her about whether she delivered the missing deposits. (Molina Dep. 7, 10). Plaintiff told them, "I did not have any idea whether I had made the deposits or not because I had not prepared those deposits." (Molina Dep. 11). Lanier testified that Plaintiff admitted that she had taken the deposits in question, which other employees had prepared, to the bank. (Lanier Aff. ¶ 6). Plaintiff testified that she was never restrained during the meeting, but she was informed that she was a suspect in connection with the missing deposits. (Molina Dep. 13).

**B.    Police Contacted**

In January 2005, following Jiffy Lube's internal investigation, Lanier contacted Detective James Hobales ("Detective Hobales" or "Hobales") of the Hialeah Police Department to report the missing bank deposit matter so that the authorities could conduct their own investigation into the missing bank deposits at the Jiffy Lube Store No. 805. (Lanier Aff. ¶ 7); (Hobales Dep. 6). Lanier decided to contact Detective Hobales directly, rather than "going through the regular detectives," because the two had a previous business relationship from working on "joint black-

---

personal knowledge," nor do they "set out facts that would be admissible in evidence," and thus the Court will not consider them on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e)(1).

market fuel cases."[4]  (Hobales Dep. 6).  After Lanier called Detective Hobales, Hobales's participation on the missing bank deposit matter was approved by his supervisor, Sergeant Miguel Del Rosa.  (Hobales Dep. 7, 8, 33).  Detective Hobales testified that his previous business connection with Lanier did not influence the way in which he investigated the case.  (Hobales Dep. 9).

Lanier provided Detective Hobales with the information gathered during Jiffy Lube's internal investigation, including the internal revenue report summaries, the bank deposit slips, and the employee timesheets, as well as the names of the three employees who had access to the missing deposits: Manager Tamarit, Assistant General Manager Fernandez, and Plaintiff.  (Lanier Aff. ¶ 8); (Hobales Dep. 6, 7, 11, 24, 36).  To that end, Detective Hobales testified that, "[a]ll the information we got in the case originally came from Mitch [Lanier] and then from the manager of Jiffy Lube."  (Hobales Dep. 11).  Lanier told Detective Hobales that, according to the employee interviews, Plaintiff was tentatively identified as having been given the deposits to deliver to the bank on the dates in question.  (Lanier Aff. ¶ 9(a)) (Hobales Dep. 35, 51).  Lanier asserted that he did not identify Plaintiff or anyone else as a definitive suspect and did not request that Plaintiff be arrested.  (Lanier Aff. ¶¶ 9(b)-(d)).  Lanier also asserted that he did not ever ask Detective Hobales or the State Attorney's Office to prosecute Plaintiff. (Lanier Aff. ¶ 10).

**D.     Police Investigation**:

Detective Hobales conducted his own investigation.  (Hobales Dep. 10, 18, 25, 40). Detective Hobales testified that he "put a lot of time into this case, probably a week of investigation and doing all the interviews . . . ."  (Hobales Dep. 47).  As part of the investigation, he examined and eliminated the possibility that a bank employee could have taken the missing

---

[4] Plaintiff testified that Lanier informed her that he had "connections" in the police department. (Molina Dep. 28-30, 32-33).

deposits. (Hobales Dep. 27). Detective Hobales also watched ten hours of bank surveillance video over a period of two days in order to identify whether any Jiffy Lube employees delivered deposits on one or more of the dates in question. (Hobales Dep. 19, 20). In addition, Detective Hobales interviewed Regional Manager Landrove and received a sworn statement from Landrove indicating that Plaintiff made the deposits on the dates in question. (Hobales Dep. 42). He also interviewed the three Jiffy Lube employees that had access to the missing deposits: Manager Tamarit, Assistant General Manager Fernandez, and Plaintiff. (Hobales Dep. 26, 51, 53). Detective Hobales set up these Jiffy Lube employee interviews and someone from Jiffy Lube arranged for the employees to meet Detective Hobales at the Hialeah Police Station. (Hobales Dep. 39).

Plaintiff testified that, the day after her meeting at Chico's Restaurant, Manager Tamarit told her to go to the Hialeah Police Station for a 9 a.m. interview. (Molina Dep. 8, 9). Plaintiff testified that she was interviewed first, then Fernandez, and then Tamarit. (Molina Dep. 8, 10, 14, 27).[5] Plaintiff testified that three people conducted her interview at the police station. (Molina Dep. 19, 26). Plaintiff's testimony regarding who was present at her interview at the police station is ambiguous. On the one hand, she testified that a police officer, a police detective, and the same Jiffy Lube investigator who was present at her Chico's interview -- presumably Lanier -- were present at her police interview. (Molina Dep. 16, 29-30). On the other hand, Plaintiff testified that "no one" from Jiffy Lube was present during the police interview and that she did not see anyone from Jiffy Lube in the police station. (Molina Dep. 18). She testified that the only time she discussed the missing money with individuals from Jiffy

---

[5] In contrast, when discussing Molina's interview at the police station, Detective Hobales testified that "she sat outside waiting in the lobby until -- we interviewed everybody before her and everybody had a specific time to be there so they wouldn't be sitting out there waiting out there." (Hobales Dep. 54).

Lube was in Chico's, not at the police station. (Molina Dep. 18). In keeping with the latter testimony, Detective Hobales testified that Lanier was not present at the Hialeah Police Station when the Jiffy Lube employees, including Plaintiff, were interviewed. (Hobales Dep. 43). Detective Hobales also testified that he did not know about the meeting between Jiffy Lube employees, including Lanier, that Plaintiff testified had occurred at Chico's the day before her police interview. (Hobales Dep. 40).

Plaintiff testified that Ozzie Gonzalez, the Spanish speaking police officer conducting her interview with Detective Hobales, accused her of taking the missing bank deposits because she had bought herself a new home. (Molina Dep. 9, 38) (Hobales Dep. 12). Plaintiff testified that she told Officer Gonzalez that no one from Jiffy Lube had ever accused her of that. (Molina Dep. 37). Plaintiff later testified, however, that Jiffy Lube's security agent had accused her of taking the money because she had purchased property. (Molina Dep. 53).

During her interview with the police, Plaintiff stated that she went into the bank and dropped off the deposits. (Hobales Dep. 13, 14). Detective Hobales testified, "She admitted to going to the bank on those days. The money didn't show up at the bank. The receipt showed up there. . . ." (Hobales Dep. 51). Plaintiff did not admit to stealing the money. (Molina Dep. 19). After her interview, she was arrested. (Molina Dep. 17, 18).

Detective Hobales and his supervisor reported the facts obtained from their investigation and Plaintiff's interview to the State Attorney's office. (Hobales 14, 40, 53). Hobales testified that it was up to the State Attorney's office to make the final decision, based on the facts from the investigation, about whether to prosecute Plaintiff. (Hobales Dep. 14, 18).

E.  **State Attorney's Office investigation**:

The State Attorney's Office also conducted an investigation before filing the criminal

case for felony theft charges against Molina. (Strozier Dep. 12, 13, 16). Alicia Ortiz, a State Attorney's Office paralegal in the Felony Screening Unit, took the testimony of witnesses and gathered factual information pertaining to the case. (Ortiz Dep. 6). As part of her investigation, she took sworn statements from Detective Hobales, Regional Manager Landrove, and Manager Tamarit. (Ortiz Dep. 15, 20, 21, 22). Based on the testimony of these witnesses and the facts, Ortiz brought the case before her supervisor, Assistant State Attorney Michael Strozier. (Ortiz Dep. 12, 13). Assistant State Attorney Strozier reviewed the factual information and testimonies provided by Paralegal Ortiz. (Strozier Dep. 12, 13, 16). Strozier determined that there was probable cause and that the case met the necessary threshold to be considered "fileable." (Strozier Dep. 12, 13, 16). Strozier made the decision to file the case. (Strosier Dep. 12, 13, 16); (Ortiz Dep. 8). Assistant State Attorney Strozier testified that he had no contact with anyone from Jiffy Lube. (Strozier Dep. 18). Then, the State Attorney's Office filed an information charging Plaintiff with grand theft.[6] (Strozier Dep. 41); (Def. Exh. 6).

### III. Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Supreme Court stated that

---

[6] It is clear from the parties' filings in this case that Plaintiff was never convicted of grand theft. Indeed, it appears that the charges against Plaintiff were dropped. Unfortunately, neither party has pointed to any evidence in the record that describes or explains the resolution of the criminal charges against Plaintiff. *See* (Strozier Dep. 32-33)(wherein the Assistant State Attorney states that he does not know how the case against Plaintiff was resolved). Defendant has not, however, raised the resolution of the criminal case as an issue in its summary judgment motion. Therefore, it is not material.

> In our view, the plain language of Rule 56(c) mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).  The Supreme Court has further stated that "Rule 56(c) therefore requires a non-moving party to go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex v. Catrett,* 477 U.S. at 324.  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248; *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  It is "material" if it might affect the outcome of the case under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

## IV.  Analysis

**A.     Malicious Prosecution**

"In order to set forth a prima facie claim for malicious prosecution in Florida, the plaintiff must prove: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant who was the defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damages conforming to legal standards resulting to plaintiff."  *Evans v. Georgia Pacific, Inc.*, 174 Fed. Appx. 516-18 (11th Cir. 2006).  "The failure of a plaintiff to establish any one of these six elements is fatal to a claim of malicious prosecution."  *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994).

Defendant has not asserted that Plaintiff cannot meet the first, third, and sixth elements of

a malicious prosecution claim; rather, Defendant asserts that Plaintiff cannot show legal causation by the Defendant, the absence of probable cause for the criminal proceeding, or the presence of malice.  Thus, the Court will address the contested elements ad seriatum.

1.      Legal Causation

Legal causation occurs "if the defendant's persuasion is the determining factor in inducing the officer's decision or if he gives information which he knew to be false and so unduly influences the authorities, then the defendant may be held liable." *Orr v. Belk Lindsay Stores, Inc.*, 462 So.2d 112, 114 (Fla. 5th DCA 1985).  However, "[w]here the defendant in a malicious prosecution action simply gives a statement of fact to the authorities, (assuming he does not know it to be false), and leaves the decision to prosecute solely in the hands of the authorities, who have the opportunity to conduct an independent evaluation, he is not regarded as having instigated the criminal action." *Dorf v. Usher*, 514 So. 2d 68, 69 (Fla. 4th DCA 1987)(citing *Orr*, 462 So.2d at 114); *accord McCraney v. Barberi*, 677 So. 2d 355, 357 (Fla. 1st DCA 1996) ("if the defendant merely gives a statement to the proper authorities, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer" there is no legal causation); *Burger v. Time Ins. Co., Inc.*, 162 F.3d 1111, 1112 (11th Cir. 1998) (same).  An independent investigation by an officer and an independent decision to prosecute by the state attorney show a lack of legal causation.  *Dorf*, 514 So. 2d at 69; *see also Martinez v. Brink's, Inc.*, 171 Fed. Appx. 263, 267 (11th Cir. 2006) (statement by manager to detectives that he could see a messenger snatch a missing bag on a video surveillance tape was insufficient to establish legal cause when the detectives independently evaluated the video footage and drew their own conclusions and when the prosecutor also independently determined that surveillance tapes and witness statements provided probable cause to prosecute).

In this case, there is no evidence that Defendant provided any information to the authorities that it knew to be false.[7] Even if the Court were to accept Plaintiff's conclusory allegations that the deposit slips and other documents were falsified, Plaintiff has not presented any evidence that Landrove or Lanier knew them to be false when Lanier handed them over to Detective Hobales.  Furthermore, undisputed evidence shows that Detective Hobales conducted his own investigation, interviewing witnesses and watching surveillance tapes.  Although Lanier and Detective Hobales had a previous business relationship, Hobales's uncontested testimony was that their prior relationship did not influence his investigation.  Lanier's undisputed testimony was that he never asked Detective Hobales or the State Attorney's Office to prosecute Plaintiff.  Furthermore, undisputed evidence shows that the State Attorney's office conducted its own investigation and came to an independent decision to prosecute Plaintiff.  Thus, because merely giving a statement of facts to the authorities does not qualify as legal causation, Plaintiff has not produced evidence sufficient to show a dispute of fact regarding legal causation.

2.  Probable cause

"To prevail in a malicious prosecution action, the burden is on the plaintiff to establish a want of probable cause to initiate the original proceedings." *Beizer v. Judge*, 743 So. 2d 134, 136

---

[7] Plaintiff asserts that Jiffy Lube's manager, Tamarit, stated in his deposition in the criminal proceeding that he had manufactured evidence used against Plaintiff.  Even if the Court were to consider that deposition, however, it does not show that Tamarit knowingly provided false information to the police.  Tamarit testified that he kept records of when employees worked on his computer.  (Tamarit Criminal Dep. 48-49).  He testified that, although he did not remember who was working on the specific dates the deposits disappeared, he printed out the work schedule records for those days and gave them to the police.  *Id.*  Plaintiff's counsel stated, "In other words, you were reconstructing . . . what had happened?" and Tamarit replied, "I guess you can say that."  (Tamarit Criminal Dep. 49).  This is not evidence that Tamarit manufactured false time sheets to give to the police; rather, it is evidence that Tamarit printed out the time sheets from the days the deposits were stolen so that the events of those days could be reconstructed. Thus, even had the Court admitted Tamarit's deposition, there would be no evidence that Defendant knowingly provided false information.

(Fla. 4th DCA 1999)(citing *Wheeler v.. Corbin,* 546 So. 2d 723, 725 (Fla. 1989)). "To shoulder the 'onerous burden' of demonstrating an absence of probable cause, the plaintiff must show that the original criminal proceeding was initiated 'without a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.'" *Martinez*, 171 Fed. Appx. at 267 (quoting *Burns v. GCC Beverages, Inc.*, 502 So. 2d 1217, 1219 (Fla. 1986)). "A determination of whether probable cause exists is based on the facts known by the defendant in the malicious prosecution action at the time the underlying action was initiated, not some later point in time." *Gill v. Kostroff*, 82 F. Supp. 2d 1354, 1364 (M.D. Fla. 2000). "When the facts relied on to show probable cause are in dispute, their existence is a question of fact for the determination of the jury; but their legal effect, when found or admitted to be true, is for the court to decide as a question of law." *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So.2d 1352, 1357 (Fla. 1994); *see also Sharp v. City of Palatka*, 529 F. Supp. 2d 1342, 1350 (M.D. Fla. 2007) (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004)).

     In this case, the undisputed facts show that Plaintiff was one of three people who had access to the missing bank deposits. The manager and the assistant manager tallied the money at the store. Plaintiff's coworkers identified her as the individual who carried the deposits to the bank. Plaintiff has not denied being the one who took the deposits to the bank on the days in question. The cash did not arrive at the bank. Later investigation showed that bank employees did not take the money. Plaintiff denied that she stole the money, but the undisputed evidence provides a reasonable grounds for suspicion, supported by "circumstances sufficiently strong in themselves to warrant a cautious man in the belief" that Plaintiff was guilty of the offense with which she was charged. *See Martinez*, 171 Fed. Appx. at 267. The evidence does not need to be

enough to prove unquestionably that Plaintiff was guilty beyond a reasonable doubt, because "one need not be certain of the outcome of the criminal proceeding to have probable cause for initiating it." *Id.* (citing *Goldstein v. Sabella*, 88 So. 2d 910, 911 (Fla. 1956)). Thus, Plaintiff has not met her "onerous burden" of demonstrating an absence of probable cause.

3.  <u>Malice</u>

"In an action for malicious prosecution it is not necessary for a plaintiff to prove actual malice; legal malice is sufficient and may be inferred from, among other things, a lack of probable cause, gross negligence, or great indifference to persons, property, or the rights of others." *Alamo Rent-A-Car*, 632 So.2d at 1357. "Legal malice, which is also referred to as technical malice or malice in law, 'requires proof of an intentional act performed without justification or excuse.'" *Olson v. Johnson*, 961 So. 2d 356, 359 (Fla. 2d DCA 2007) (quoting *Reed v. State*, 837 So.2d 366, 368-69 (Fla. 2002)). "Legal malice may be inferred from one's acts, and -- unlike actual malice -- does not require proof of evil intent or motive." *Id.* (internal quotations omitted).

As discussed above, Plaintiff has not produced evidence sufficient to show a lack of probable cause. Nor is there evidence on the record of gross negligence or great indifference to persons, property, or the rights of others. There is no indication that the actions of Defendant in this case were performed without justification or excuse. Therefore, Plaintiff has not produced evidence sufficient to show malice. As Plaintiff has not produced evidence sufficient to create a dispute of fact with regard to three of the six required elements of her malicious prosecution claim, summary judgment is warranted on that claim.

**B.   False Arrest**

The prima facie case for false arrest under Florida law consists of "1) the unlawful

detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances." *Montejo v. Martin Memorial Center, Inc.*, 935 So.2d 1266, 1268 (Fla. 4th DCA 2006). "To be liable for false imprisonment, a person must personally and actively participate, directly or indirectly by procurement, in the unlawful restraint of another person against their will." *Harris v. Kearney*, 786 So.2d 1222, 1225 (Fla. 4th DCA 2001). A defendant "may not be held liable in tort where he neither actually detained another nor instigated the other's arrest by law enforcement officers." *Id.* (quoting *Pokorny v. First Fed. Sav. & Loan Ass'n of Largo*, 382 So.2d 678, 682 (Fla.1980)).

Plaintiff has not alleged that anyone at Jiffy Lube directly participated in restraining her against her will. Rather, she asserts that Defendant instigated her arrest by law enforcement officers. However, if the Defendant "makes an honest, good faith mistake in reporting an incident, the mere fact that his communication to an officer may have caused the victim's arrest does not make him liable when he did not in fact request any detention." *Harris v. Kearney*, 786 So. 2d 1222, 1225 (Fla. 4th DCA 2001) (quoting *Pokorny v. First Fed. Sav. & Loan Ass'n of Largo*, 382 So.2d 678, 682 (Fla.1980)). The Florida Supreme Court has held that an "an honest, good faith mistake in reporting an incident," may extend even to identifying the plaintiff as a suspect, if the defendant acts reasonably in doing so. *Porkorny*, 382 So. 2d at 682. The evidence in this case is that Defendant's employees merely handed over the results of their own internal investigation to the police. It is undisputed that they never asked Detective Hobales to arrest or charge Plaintiff and that Plaintiff was only arrested after the police's own investigation. Defendant's actions in reporting the crime were neither unwarranted nor unreasonable under the circumstances.

Furthermore, under Florida law, "[p]robable cause is an affirmative defense to a false arrest claim." *Mailly v. Jenne*, 867 So. 2d 1250, 1251 (Fla. 4th DCA 2004). In the context of a false arrest claim, probable cause does not require that Defendant know facts that would prove beyond a reasonable doubt the guilt of Plaintiff; instead, "probable cause exists when the circumstances are sufficient to cause a reasonably cautious person to believe that the person accused is guilty of the offense charged." *Mailly*, 867 So. 2d at 1251 (quoting *Fla. Game & Freshwater Fish Comm'n v. Dockery*, 676 So. 2d 471, 474 (Fla. 1st DCA 1996)). As discussed above, the circumstances in this case were that Plaintiff was given deposits, tallied by someone else, which then came up short at the bank. This undisputed evidence is sufficient to show probable cause. Accordingly, Plaintiff has not showed a dispute of material fact with respect to her false arrest claim.

### V. Conclusion

For the reasons stated above, it is, therefore:

**ORDERED AND ADJUDGED** that

1. Defendant's Motion for Summary Judgment **(D.E. No. 19)** is hereby **GRANTED**. A Final Judgment shall be entered separately.

2. All pending motions are **DENIED AS MOOT**, and this case is **CLOSED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 8th day of October, 2008.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Brown
All Counsel of Record